UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JAMES STEPHENS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 2:20-cv-00308-JRS-MG |
| | ) |
| BRIAN SMITH, | ) |
| | ) |
| Respondent. | ) |

**ENTRY DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DIRECTING ENTRY OF FINAL JUDGMENT**

James Stephens' petition for a writ of habeas corpus challenges his conviction in prison disciplinary case ISF 19-08-0181. For the reasons explained in this Entry, Mr. Stephens' petition is **denied**.

**A. Overview**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

**B. Background and Procedural History**

This case has an extensive background and procedural history. The Court will summarize the respondent's statement of facts along with corresponding documents in the record.

Mr. Stephens is incarcerated at Putnamville Correctional Facility ("PCF"). On July 18, 2019, an investigation was opened against him for possible intimidation of staff at PCF. Dkt. 9-1. Specifically, Mr. Stephens "may have used intimidation techniques towards Ms. Eads," a staff member of the law library, "in an attempt to expose her to hatred, contempt, disgrace or ridicule which would harm her reputation which is a Class A misdemeanor under Indiana Criminal Code 35-45-2-1, 'Intimidation.'" *Id.* The conduct report[1] states that "[t]hrough Ms. Eads testimony and the testimony of Offender James Stephens DOC #996056 it was determined that Offender Stephens did in fact use intimidation techniques toward Ms. Eads because she would not give into Offender Stephens romantic approaches." *Id.*

A Report of Investigation Incident was compiled on August 12, 2019. Dkt. 9-2. The investigation was opened on July 18, 2019, and Ms. Eads was interviewed then. The report states that Ms. Eads was concerned that Mr. Stephens, one of her library clerks, was "going to harm her husband" because she was reclassifying Mr. Stephens. *Id.* Ms. Eads stated Mr. Stephens believed that she spent too much time with another clerk in the library, and he was upset by this. *Id.* He prevented offenders from approaching her desk, refused her orders to leave, and typed up two declarations for other inmates that accused Ms. Eads of sharing personal legal information about other offenders. *Id.* He attempted to have the inmates sign the declarations in order to circulate them around PCF. *Id.* Copies of declarations were found during a shakedown of Mr. Stephens'

---

[1] The conduct report at docket 9-1 is dated March 3, 2020, and notated that the report was "rewritten on March 3, 2020 due to pending re-hearing." *Id.*

property. *Id.* One of the inmates, Offender Adams, stated that Mr. Stephens had attempted to get him to sign the declaration. Adams stated that he did not sign the declaration because it was false. *Id.*

On July 18, Mr. Stephens threatened that he would "send his people from Chicago" to Ms. Eads' husband and children. She was not sure what he meant by this statement. *Id.* He threatened to circulate the declarations at PCF if she did not resign by July 22, 2019. *Id.* He stated that "he was in love with her and the only way he could get over her is if she left the facility." *Id.*

Mr. Stephens was interviewed on August 12, 2019, and he admitted that he was "attracted to Ms. Eads," was upset that she did not pay more attention to him, and "maintained that all the information he provided in this case [was] factual but he would not have brought this information into the light if she was not planning to reclass him[.]" *Id.* He could not provide any inmate witnesses who could corroborate his claims against Ms. Eads. *Id.* The record indicates that Mr. Stephens wrote a "love/threatening note" to Ms. Eads. *Id.*

Mr. Stephens was screened for rehearing and pled not guilty. Dkt. 9-4. He did not request a lay advocate, wished to call several witnesses, and requested video from March 3, 2020[2] in the location of the porter's room hallway between 8:15 and 8:25 am. *Id.*

Mr. Stephens' rehearing was held on March 12, 2020. Dkt. 9-6. Mr. Stephens stated that Ms. Eads wanted him to put out a "hit" on her husband's ex-wife. *Id.* The respondent notes that there were three hearings; the first two were vacated on appeal and rehearings were ordered.[3] Six

---

[2] The video Mr. Stephens requested was reviewed and a summation was provided at docket 9-7. The video does not pertain to the original conduct report for the incident date of July 18, 2019. *Id.* Rather, Mr. Stephens requested video of a separate incident occurring on March 3, 2020. *Id.* While the video is available, and has been filed *ex parte* with the Court, it is not relevant to this petition.

[3] *See* dockets 9-13 and 9-14 noting that sanctions were vacated, and Mr. Stephens would be notified of rehearing.

witness statements were provided[4] but only three relate to this petition. Dkt. 9-9. Captain Clark was present at the hearing to "observe." Dkt. 9-6. Mr. Stephens stated he requested three staff witnesses, and he wanted them at the hearing. *Id.* He prepared an attached written statement. *Id.* The disciplinary hearing officer ("DHO")[5] found Mr. Stephens guilty after consideration of the staff reports, offender's statement, and witness evidence. *Id.* The video Mr. Stephens requested was considered but it was, as noted earlier, not relevant. *Id.* Mr. Stephens' sanctions included a written reprimand, 30-day loss of GTL (time served), 60 days in disciplinary restrictive status housing (time served), deprivation of 90-days previously earned good time credit, and a demotion of credit class. *Id.*

Mr. Stephens appealed to the Warden and then to the appeal review officer, and both appeals were denied. Dkts. 9-10; 9-11; 9-12; dkt. 9-13; dkt. 9-14. Mr. Stephens then filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Dkt. 2.

---

[4] The respondent summarizes these witness statements as: (1) Deputy Warden Hartzell stated that he informed Lt. Criss that a rehearing had been ordered and that it was within guidelines to rewrite the conduct report.; (2) Lt. Criss confirmed Hartzell's statement; (3) Correctional Officer Evans was present for the discussion between Hartzell and Criss and confirmed that it was within guidelines to rewrite the report. Dkt. 9-9. Two offender witness statements claim that the offenders did not hear Mr. Stephens threaten Ms. Eads, and another officer stated he had no knowledge of the incident. *Id.*

[5] The DHO wrote that the guilty finding was due to the conduct report and report of investigation. Dkt. 9-6. The DHO further documented that Offender Oneil admitted to not knowing about anything until after the fact and Offender Stacy admitted to not having any knowledge and not hearing Stephens threaten Eads. *Id.* The DHO stated "IC Code provided doesn't state what report states. All other evidence is irrelevant to original report." *Id.*

### C. Analysis

Mr. Stephens raises the following grounds in his petition: (1) he was placed in disciplinary restrictive housing pending the investigation and he was to be housed in administrative segregation with less restrictions; (2) the report of conduct did not contain the language of the violated statute for intimidation and was inappropriately rewritten for the rehearing; (3) he was punished twice for the same conduct report; and (4) the DHO was influenced by other staff at the hearing. Dkt. 2. The Court limits its analysis to only these grounds, as identified in Mr. Stephens' petition at docket 2. Mr. Stephens raises additional grounds in his reply that the Court need not consider because new arguments may not be raised for the first time in a reply. *Darif v. Holder*, 739 F.3d 329, 336 (7th Cir. 2014).

### 1. Restrictive Housing Pending Hearing

Mr. Stephens' argument that he was placed in restrictive housing prior to his disciplinary hearing, and that he was denied the privileges of the lesser restriction of administrative segregation are not cognizable habeas corpus due process claims. "[I]n all habeas corpus proceedings under 28 U.S.C. § 2254, the successful petitioner must demonstrate that he 'is in custody in violation of the Constitution or laws or treaties of the United States.'" *Brown v. Watters*, 599 F.3d 602, 611 (7th Cir. 2010) (quoting 28 U.S.C. § 2254(a)). "It is the custody itself that must violate the Constitution. Accordingly, prisoners who are not seeking earlier or immediate release are not seeking habeas corpus relief." *Washington v. Smith*, 564 F.3d 1350, 1350 (7th Cir. 2009). In other words, "a habeas corpus petition must attack the fact or duration of one's sentence; if it does not, it does not state a proper basis for relief." *Id.* Typically, in the context of prison disciplinary proceedings, this means that in order to be considered "in custody," the petitioner must have been deprived of good-time credits, *Cochran v. Buss,* 381 F.3d 637, 639 (7th Cir. 2004) (per curiam), or of credit-earning class,

5

*Montgomery v. Anderson,* 262 F.3d 641, 644-45 (7th Cir. 2001). When such a sanction is not imposed, the prison disciplinary officials are "free to use any procedures it chooses, or no procedures at all." *Id.* at 644.

Mr. Stephens' placement in disciplinary segregation prior to his disciplinary hearing does not pose a challenge to the loss of earned credit time or a demotion in credit class. Therefore, these assertions do not relate to his custody under § 2254, and his request for relief on this ground must be denied. Further, upon Mr. Stephens' conviction, his sanction of segregation was designated as time served. Dkt. 9-6. Though Mr. Stephens contends he suffered atypical and significant hardship because he was denied legal work and documents, his personal property, and commissary food, these matters concern his conditions of confinement and are not grounds for a writ of habeas corpus.

### 2. Rewritten Conduct Report and Sufficiency

Mr. Stephens argues that the conduct report does not state the language of the state statute he was convicted of violating, Ind. Code § 35-45-2-1, intimidation. Dkt. 2 at 3. His argument that this violates IDOC policy fails. Prison policies are "primarily designed to guide correctional officials in the administration of a prison" and not "to confer rights on inmates." *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995). Therefore, claims based on prison policy are not cognizable and do not form a basis for habeas relief. *See Keller v. Donahue*, 271 F. App'x 531, 532 (7th Cir. 2008) (rejecting challenges to a prison disciplinary proceeding because, "[i]nstead of addressing any potential constitutional defect, all of [the petitioner's] arguments relate to alleged departures from procedures outlined in the prison handbook that have no bearing on his right to due process"); *Rivera v. Davis*, 50 F. App'x 779, 780 (7th Cir. 2002) ("A prison's noncompliance with its internal regulations has no constitutional import—and nothing less warrants habeas corpus review."); *see*

*also Estelle v. McGuire*, 502 U.S. 62, 68 at n.2 (1991) ("[S]tate-law violations provide no basis for federal habeas relief.").

Mr. Stephens argues that the 2018 version of the statute is what was read and relied upon by the Investigations and Intelligence officer who conducted his investigation. Dkt. 2 at 3. Mr. Stephens states that this version of the statute was invalid because the code was amended in 2019. *Id.* at 5. The respondent argues that Mr. Stephens "attempts to engage in a hyper-technical review of the statutes, claiming that the statute had been amended but the conduct report contained the wrong, superseded version." Dkt. 9 at 15.

The respondent argues that the purpose of a conduct report is to notify the offender of his charge so that he can marshal a defense, and that such notice was given to Mr. Stephens. *Id.* at 14. The Court does not discern that Mr. Stephens challenged sufficient notice in his petition, and as evidenced by the lengthy procedural history in this case, Mr. Stephens was aware that he was being charged with intimidation. The best that the Court can discern from Mr. Stephens' convoluted argument is that the original conduct report states that he used intimidation techniques to expose Ms. Eads to "hatred, contempt, disgrace, or ridicule which would harm her reputation as a public servant which is Level 5 Felony" but in the newly written report this similar language is used and is a Class A misdemeanor, which is incorrect based on how different provision within the statute are applied. *See* dkts. 2-11; dkt. 9-1. Moreover, Mr. Stephens argues that the conduct report fails to state the threat communicated and that "intimidations tactics" and "public servant" are not explicitly in the language of the law. Dkt. 2 at 5. The Court does not find that any misinterpretation of the punishment under the statute, or the application of its provisions which describe different ways in which intimidation can occur, in some manner show that Mr. Stephens was not aware of

the charge against him or that his conduct could not fit the definition of intimidation under either the 2018 or 2019 version of the statute.

Accordingly, he is not entitled to habeas corpus relief on this ground. Additionally, while Mr. Stephens lists "insufficient evidence" in his petition, he does not develop any argument to show how the evidence against him was insufficient to support a charge of violating any federal, state, or local law. He merely states the conduct report did not cite the language of the statute. The Court need not address undeveloped arguments.

### 3. Duplicative punishment and Double Jeopardy

Mr. Stephens contends that he was punished twice for the same conduct report. As it relates to Mr. Stephens' sanctions other than good time or credit earning class, the respondent argues that such sanctions that do not constitute "custody" are moot. Dkt. 9 at 16. As the Court previously discussed regarding Mr. Stephens' arguments about segregation, these sanctions are not viable grounds for habeas corpus relief.

Further, the procedural history indicates that Mr. Stephens' grievous sanctions were vacated in each order granting rehearing. Moreover, Mr. Stephens concedes in his reply that double jeopardy does not apply to disciplinary proceedings. Dkt. 14 at 10.

Accordingly, Mr. Stephens is not entitled to habeas corpus relief on these grounds.

### 4. Impartiality or Undue Influence of DHO

Mr. Stephens claims that the DHO was partial because she was instructed on how to rule at the hearing. Dkt. 2 at 6-7. Further, Deputy Warden Hartzell and Investigator David Wire were instructed by the central office department attorney and appeal review officer in how to rewrite the report of investigation and report of conduct. *Id.* Mr. Stephens contends that the DHO was

influenced by Captain Clark who was present to observe the hearing, and that two witnesses stated that Mr. Stephens did not make any threats toward Ms. Eads. *Id.*

A prisoner in a disciplinary action has the right to be heard before an impartial decision maker. *Hill*, 472 U.S. at 454. However, hearing officers "are entitled to a presumption of honesty and integrity" absent clear evidence to the contrary. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003); *see Perotti v Marberry*, 355 F. App'x 39, 43 (7th Cir. 2009) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). Moreover, the "constitutional standard for impermissible bias is high," and hearing officers "are not deemed biased simply because they presided over a prisoner's previous disciplinary proceeding" or because they are employed by the prison. *Piggie*, 342 F.3d at 666. The presumption is overcome—and an inmate's right to an impartial decision maker is breached—in rare cases, such as when the hearing officer has been "directly or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof." *Id.* at 667.

The respondent argues that authorship is not a constitutional issue under *Wolff* or *Hill* and that both the conduct report and report of investigation are signed by Investigator Wire. Dkt. 9 at 17. Mr. Stephens does not show how prison officials receiving assistance from the legal department violates the due process protections in habeas corpus actions. Moreover, Mr. Stephens cannot show beyond mere speculation how other staff members observing the hearing somehow influenced the impartiality of the DHO. Though, Mr. Stephens argues he was asked to step out of the hearing so the DHO could make her decision and alleged that she had a conversation during this time with Captain Clark, Mr. Stephens still cannot show any partiality on the DHO's part. Dkt. 2 at 7. Mr. Stephens has not alleged that the DHO was involved in his underlying investigation or that the DHO had any intimate relationship with any witnesses. Finally, simply because the DHO

may not have accepted witness testimony that Mr. Stephens' did not threaten Ms. Eads as credible does not establish bias.

Accordingly, Mr. Stephens has not overcome the presumption of impartiality of the DHO, and he is not entitled to relief on this ground.

### D. Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558.  There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Stephens to the relief he seeks. Accordingly, Mr. Stephens' petition for a writ of habeas corpus is **denied** and the **action dismissed** with prejudice.

Final Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date:   4/17/2021

_JAMES R. SWEENEY II, JUDGE_
United States District Court
Southern District of Indiana

Distribution:

JAMES STEPHENS
996056
PUTNAMVILLE - CF
PUTNAMVILLE CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

David A. Arthur
INDIANA ATTORNEY GENERAL
David.Arthur@atg.in.gov